MABEL OHLQUIST, Plaintiff, v. CHESTER A. NORDSTROM and Another, Defendants.

Supreme Court, Chautauqua County, April 19, 1932.

*Emmet H. Ross*, for the defendant Hickman.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*Thomas R. Wheeler* of counsel], appearing specially for the defendant Nordstrom.

MACGREGOR, J. This action was brought to recover damages for injuries sustained by the plaintiff against the defendants as joint tort feasors. A judgment was rendered against both. The judgment was affirmed upon appeal. The defendant Hickman has paid the judgment and now seeks to recover judgment against the defendant Nordstrom for one-half of the judgment. He seeks to do this by means of a motion pursuant to the provisions of section 211-a of the Civil Practice Act which provides: " Such recovery may be had in a separate action; or where the parties have appeared in the original action, a judgment may be entered by one such defendant against the other by motion on notice."

It appears that the defendant Nordstrom, who at the time of the commencement and trial of the action was a resident of the city of Jamestown, N. Y., has become a resident of the State of Pennsylvania. Service of notice of this motion was made upon him without the State and also upon the attorneys in Jamestown who represented him upon the trial of the action. He now appears

specially and contends that the service of the notice of this motion is a nullity as to the service upon him personally because he is not within the jurisdiction of the courts of the State of New York and that the service upon the attorneys who represented him in the action is a nullity for the reason that the relation of attorney and client ceased prior to the service of the notice of motion.

A determination of the questions involved requires an interpretation of section 211-a. Before the enactment of that statute if a judgment was obtained against joint tort feasors, the plaintiff could issue execution against one of them and the one required to pay had no redress. The Legislature has, however, by this statute given relief from that illogical rule and provided that a joint tort feasor who has been called upon by the plaintiff to pay the judgment may require his codefendant to pay his *pro rata* share.

The courts have been endeavoring to arrive at a determination as to the legislative intent. Different conclusions have been arrived at as to whether the statute created a new cause of action or whether it was merely a matter of procedure in an existing action. However, the Court of Appeals in its opinion upon the appeal in the case of *Deutscher* v. *Cammerano* (256 N. Y. 328, at p. 332) says: " When the cause of action arose in 1925 upon the tort claim there was no vested right in Cammerano that the manufacturing company should pay for his negligence contributing to the accident. The choice was given to the plaintiff, as heretofore stated, to collect the entire damage out of Cammerano. If he happened to profit by the plaintiff pursuing the other defendant it was his luck rather than any right which vested in him. The law has now remedied this inequality and lessened a liability depending upon the chance of the plaintiff's choice. This equality, now established by the law, Cammerano is entitled to, as the judgment recovered against him was obtained after the passage of the amendment, but the equality is only established by his payment of his share of the judgment.

"*Jacobus* v. *Colgate* (217 N. Y. 235) related to a statute establishing a right as distinguished from a mere remedy which did not theretofore exist. Here there was always a liability upon the part of Cammerano for the full amount of the tort judgment which the statute has reduced to a *pro rata* share with his co-defendants. He pays the co-defendant instead of paying the plaintiff. The change relates to the remedy — to an unnecessary and unjust inequality in procedure."

The Legislature certainly did not intend to give a hollow right to a codefendant. The statute says, " where the parties have

appeared in the original action, a judgment may be entered by one such defendant against the other by motion on notice." What purpose would there have been to have used the words the Legislature did use if it had not been intended that the action still continued for the purpose of the procedural remedy and that the one defendant had the remedy against the other as a part of the procedure in the same action. The statute does not say that the notice of motion is to be served personally upon the codefendant because of the fact that his appearance in the action had ceased. A proper construction is that the action continues because there is something that remains to be done and the authority of the attorneys under the original appearance continues.

The very facts in this case accentuate the argument. If the defendant Nordstrom at the time of the commencement of the action had been a non-resident and appeared, thus submitting himself to the jurisdiction of the courts of this State, he could not escape the jurisdiction by discharging his attorneys.

As was well said in the case of *Creighton* v. *Kerr* (20 Wall. 8, 13): " The appearance of the defendant may remain, although the attorneys, by whom it was entered, have withdrawn. Its effect cannot be annulled by such withdrawal. The appearance gives rights and benefits in the conduct of a suit, to destroy which by a withdrawal would work great injustice to the other party."

And as was said by the court in *United States* v. *Curry* (6 How. [U. S.] 106, at p. 111): " No attorney or solicitor can withdraw his name, after he has once entered it on the record, without the leave of the court. And while his name continues there, the adverse party has a right to treat him as the authorized attorney or solicitor, and the service of notice upon him is as valid as if served on the party himself. And we presume that no court would permit an attorney who had appeared at the trial, with the sanction of the party, express or implied, to withdraw his name after the case was finally decided. For if that could be done, it would be impossible to serve the citation where the party resided in a distant country, or his place of residence was unknown, and would in every case occasion unnecessary expense and difficulty, unless he lived at the place where the court was held. And, so far from permitting an attorney to embarrass and impede the administration of justice, by withdrawing his name after trial and final decree, we think the court should regard any such attempt to do as open to just rebuke."

It is a general rule of law that the authority of an attorney ceases upon the entry of judgment but this rule has been much modified.

The Appellate Division of this department discusses the question quite at length in the case of *Commercial Bank* v. *Foltz* (13 App. Div. 603). The court said: " It is true that in some of the cases the general proposition is asserted that the authority of the attorney terminates with the judgment, but it is certain that this statement is too broad and needs many qualifications.

" The attorney may stipulate to postpone an execution that had been issued upon a fraudulent judgment. (*Read* v. *French*, 28 N. Y. 285.)

" If employed to collect a claim he has authority by virtue of his original retainer, after judgment, to institute supplementary proceedings. (*Ward* v. *Roy*, 69 N. Y. 96.)

" Upon a judgment being paid to him as attorney by a defendant held upon a body execution, the attorney can authorize the sheriff to discharge the defendant. (*Davis* v. *Bowe*, 118 N. Y. 55.)

" He may make and serve a notice of appeal from a judgment against his client, and no other attorney can issue such notice until properly substituted in the place of the attorney of record. (*Schuler* v. *Maxwell*, 38 Hun, 240, and cases cited; opinion of HARDIN, J., in *Miller* v. *Shall*, 67 Barb. 446.)

" An appeal must be taken by serving upon the attorney for the adverse party the notice of appeal. (Code Civ. Proc. § 1300.)

" The power of an attorney to satisfy judgments extends for two years after judgment has been entered, even as against the consent of the client. (Code Civ. Proc. § 1260; *Woodford* v. *Rasbach*, 8 Civ. Proc. Rep. 321, and cases cited.)

" Many other instances might be referred to showing the continuation of the attorney's authority after judgment.

" In *Lusk* v. *Hastings* (*supra* [1 Hill, 656]) COWEN, J., while asserting the general rule, finds many exceptions to the proposition that the attorney's authority terminates with the judgment, and he says:

" ' It should also be noticed that the law prolongs the power for such time after judgment as may be necessary to take care of certain steps which grow out of the main proceeding.'

" We apprehend the true rule to be that, for all purposes of collecting the judgment, or to vacate, modify or reverse it, the power of the attorney of record continues with the presumed assent of his client until some affirmative steps are taken by the client to dismiss him from the case, or some of the causes intervene specified in section 65 of the Code."

In *Brown* v. *Arnold* (127 Fed. 387, at p. 392) the court says: " As suggested by Judge McCRARY in *Grames* v. *Hawley*, 50 Fed. 319, the only exception recognized to the rule that service upon an

attorney after the termination of the cause in which he is employed was not binding on the client is that, in case of appeal or writ of error, service of citation may be made upon the attorney who appeared of record for the adverse party in the trial court. There does not seem to be any statutory provision or prescribed rule of court touching the service of such notice upon the attorney. My investigation leads to the conclusion that, in so far as the federal courts are concerned, the practice had its origin in the English chancery courts, and arose, *ab inconvenienti*, from the necessities of the case, where the litigant might be beyond the seas or remote from the court, while the attorney or counsel was presumably resident in the vicinity of the court, and readily found for such service. Hence, it became the doctrine of the chancellors that, for the purpose of such notice, counsel of record could not withdraw his name from the docket without leave of court. This rule has arbitrarily been extended in practice to writs of error."

In the case of *Love* v. *Hall* (3 Yerg. [Tenn.] 408) the court says: " We do not admit that the attorney, having obtained the judgment, ceases further to be considered as the attorney for his client. The understanding of the profession and practice of the country has been the other way. Business once committed to his care by a client at a distance, must be considered as subject to his control and management to the end of the matters litigated, unless one or the other puts an end to the relation of attorney and client. Not pretending minutely to go into this relative relation, or to fix the boundary between them, it is sufficient to say that McKinney, by appearing in the circuit court in the same cause, on behalf of his client, has estopped himself from denying his relation, only when such denial may have the effect of embarrassment, and defeat the benefit of the only process that by possibility might avail his adversary."

In *Kissick* v. *Hunter* (184 Penn. St. 174, at p. 179) the court says: " But the interests of the defendant no more end with the judgment than those of the plaintiff, if in fact they are not even more vitally involved. There is therefore no more reason why the attorney's authority should be arbitrarily held to terminate at this point in one case than in the other. As already said, the plaintiff's attorney may issue execution, and control it, give time to the defendant, direct the sheriff to postpone sale, etc., * * * and why should not the defendant's attorney, at least in the case where execution immediately follows judgment in the suit he was retained to defend, be presumed to be authorized to continue his care over his client's interests? We know that it is every day's practice for lawyers to do so and presumptions are founded on average experience of

what like parties would do under like circumstances.   *   *   *   The matter is one which goes not to the substance of the action itself, but largely to the mode of proceeding.   When therefore an attorney who has been acting for the defendant up to judgment on which execution is promptly issued, files a waiver of inquisition, it is to be presumed that he is acting under authority, and if the client desires to disavow, he must do so within a reasonable time."

In *Lady De La Pole* v. *Dick* (L. R. [29 Ch. 351]) a notice of appeal was served on the defendant's solicitors.   The defendant had departed from the country.   They stated that they had ceased to act for him, but that they were still his solicitors on the record. In the opinion the court says: " ROLLE, C. J., lays down in *Lawrence* v. *Harrison* [Sty. 426] a principle on which we may act.   He says ' The only question is, whether the warrant of attorney be determined by the judgment given in the suit wherein he was retained; and I conceive it is not, for the suit is not determined, for the attorney after the judgment is to be called to say why there should not execution be made out against his client, and he is trusted to defend his client as far as he can from the execution.' According to that principle, until the judgment has been worked out, there is a duty imposed on the solicitor on the record to defend his client against any improper steps taken for the purpose of enforcing the judgment.   Until that time, therefore, the solicitor on the record must be taken, as between him and the opposite party, to represent the client unless the client not only discharges him but substitutes another solicitor on the record."

In *Powers* v. *Manning* (154 Mass. 370) the court says: " No attorney or solicitor can withdraw his name, after he has once entered it on the record, without the leave of the court.   And, while his name continues there, the adverse party has a right to treat him as the authorized attorney or solicitor, and the service of notice upon him is as valid as if served upon the party himself," and we presume that no court would permit an attorney who had appeared at the trial with the sanction of the party express or implied, to withdraw his name after the case was finally decided.

Counsel for defendant Nordstrom cites the case of *New York Life Insurance Co.* v. *Dunlevy* (241 U. S. 518) as authority for the contention that the authority of an attorney representing a non-resident defendant does not extend to matters in relation to the judgment after entry, but it seems to me that the case is an authority for a contrary conclusion.

The question in that case arose upon interpleader and the court said that the interpleader proceedings were not essential concomitants of the original action but plainly collateral and when

summoned to respond in the original action, she was not bound to anticipate the interpleader proceedings. The court quotes with approval, however, from its opinion in the case of *Michigan Trust Co.* v. *Ferry* (228 U. S. 346): " If a judicial proceeding is begun with jurisdiction over the person of the party concerned it is within the power of a State to bind him by every subsequent order in the cause."

In Freeman Judgments ([5th ed.] § 353) it is said: " But various motions may be made and proceedings taken after final judgment, either to correct it by amendment, to vacate it for some error or irregularity, to avoid it by writ or error or appeal, or to control process issued for its enforcement. Of these proceedings, unless they necessarily result from a mere inspection of the record, the parties are entitled to notice; but such notice may generally be given to their attorneys, who, notwithstanding the entry of judgment, are regarded as still representing them for the purpose of receiving notices of motion."

The court, therefore, arrives at the conclusion that the service of the notice of motion upon the attorneys for the defendant Nordstrom was sufficient under section 211-a of the Civil Practice Act and the motion of the defendant Hickman for leave to enter judgment against the defendant Nordstrom is granted.