TRITTO, Plaintiff-Appellee, v. TRITTO, Defendant-Appellant.

Ohio Appeals, Seventh District, Mahoning County.

No. 3766. Decided June 16, 1955.

Spain & Spain, Warren, for plaintiff-appellee.
Thomas E. Antonelli, Youngstown, for defendant-appellant.

**OPINION**

By NICHOLS, J.

This action was instituted in the Common Pleas Court of Mahoning County, Ohio, and is now in this court of appeals on questions of law from the judgment of the trial court in favor of plaintiff, Sophia Tritto, against her husband, Anthony Tritto.

In plaintiff's petition she allegees that she and defendant were married in New York City on the 17th day of January, 1943; that prior to the 10th day of September, 1954, an action was commenced by her in the Supreme Court of Westchester County in the State of New York for separation from bed and board against defendant, wherein an order was made for the payment of alimony for the support of plaintiff in the sum of $20.00 per week; that no part of that order was complied with by

defendant; that said action is still pending, and that said order is still in full force and effect to this date, and that as of November 21, 1952, there was due and owing the plaintiff from the defendant the sum of $7440.00. Plaintiff further alleges the defendant is possessed of certain described property situated in Mahoning County, Ohio; and further avers that by consideration of the Supreme Court of Westchester County, New York, on the 21st day of November, 1952, she recovered a judgment against said defendant in the sum of $7440.00 with $10.00 costs; that an exemplified copy of said judgment is attached to her petition; that said court was a court of general jurisdiction, duly created by the laws of the state of New York; and that no part of that judgment has been paid; and prays for judgment against defendant for $7450.00 and costs.

Defendant, after admitting the marriage, and that said proceedings were commenced by plaintiff for separation from bed and board against defendant, for answer alleges that no personal summons or notice was served upon him in the action set forth in the petition upon which such alleged judgment was obtained, nor did he appear in said action for the alleged judgment in the state of New York; that ever since November, 1945, his domicile and residence was in the state of Ohio, and that on November 21, 1952, he was a resident of the state of Ohio and did not discover or learn of the alleged judgment rendered by the Supreme Court of Westchester County until the commencement of this action; and defendant prays the petition be dismissed.

By amended reply to defendant's answer plaintiff denies each and every affirmative allegation thereof, and alleges:—

"* * * that service on the Order to show Cause why judgment should not have been rendered in the Supreme Court of Westchester County in the State of New York in favor of this plaintiff and against the defendant herein, was made on his attorney of record, Thomas Barnes, 31 Croton Avenue, Ossining, New York, on the 11th day of November, 1952, by an order of Elbert L. Gallagher, Justice of the Supreme Court in said county under date of November 7, 1952; that said order was issued under and by virtue of Section 1171-b of the Civil Practice Act for the State of New York which is as follows:

" 'Where the husband, in an action for divorce, separation, annulment, or declaration of nullity of a void marriage, or a person other than the husband when an action for an annulment is maintained after the death of the husband, makes default in paying any sum of money required by the judgment or order directing the payment thereof, the court in its discretion may make an order directing the entry of judgment for the amount of such arrears, or for such part thereof as justice requires having regard to the circumstances of the respective parties, together with ten dollars costs and disbursements. The application for such order shall be upon such notice to the husband or other person as the court may direct. Such judgment may be enforced by execution or in any manner provided by law for the collection of judgments. The relief herein provided for is in addition to any and every other remedy to which the wife may be entitled under the law, provided that when a judgment for such arrears or any part thereof shall have been entered pursuant to this section, such judgment shall thereafter not be sub-

ject to modification under the discretionary power granted by this section; and after the entry of such judgment the judgment creditor shall not thereafter be entitled to collect by any form of remedy any greater portion of such arrears than that represented by the judgment so entered. (Am. L. 1940 ch. 226, in effect Sept. 1; L. 1947 Ch. 743, in effect Sept. 1; L. 1948 ch. 212, in effect March 21).'

"Further replying plaintiff says that the Supreme Court of Westchester County in the State of New York, had continuing jurisdiction over the person of the defendant and that the judgment heretofore rendered is valid and in full force and effect."

The facts disclosed by the record in the common pleas court of Mahoning county are: Sophia Tritto, after having been married to Anthony Tritto for a period of two and one-half years, moved out of their home in Ossining, New York, and filed her action against him on August 20, 1945, in the Supreme Court of Westchester County, State of New York. a court of general jurisdiction, where both parties resided at the time, wherein she sought a legal separation from bed and board, and an order for temporary alimony for her support during the pendency of the action and for her attorney fees. The attorney for Mrs. Tritto served her husband with notice to answer within twenty days or judgment would be taken by default. Anthony Tritto procured the services of Attorney Thomas H. Barnes, who was not then in partnership with any other attorney, for the purpose of answering the motion for temporary alimony, and Mrs. Barnes filed such answer on behalf of Mr. Tritto, praying that the motion for temporary alimony be denied.

The matter coming on for hearing before M. B. Patterson, J. S. C., on the 12th day of September, 1945, and **neither party appearing in person**, the judge on motion of the attorney for plaintiff, "on reading and filing the notice of motion dated April 20, 1945, the affidavits of Emanuel Lauterbach sworn to the 20th day of August, 1945, and the affidavit of Sophia Tritto sworn to on the 20th day of August, 1945, and upon the Summons and Complaint in this action duly verified the 20th day of August, 1945, all in support of said motion, and the affidavit of Anthony Tritto sworn to the 4th day of September, 1945, and the answer of Anthony Tritto verified the 4th day of September, 1945, all in opposition thereto," ordered that the defendant be directed to pay to plaintiff $150.00 for her counsel fee and to pay her $20.00 per week alimony during the pendency of the action.

No further proceedings were taken in the New York court until the 5th day of November, 1952. In the meantime Anthony Tritto had removed from the State of New York to Youngstown, Ohio, where he has resided since about the first day of December, 1945. He here testified that he was unable to obtain employment in New York, and that after obtaining employment in Youngstown he wrote his wife letters inviting her to join him in Youngstown. She testified she never heard from him after the order for temporary alimony made September 12, 1945, both she and her attorney testifying that they did not know where he resided after he left New York.

The parties have never been divorced, and no decree of legal separa-

tion has ever been entered in her behalf. Of course the husband had the right to remove from New York to Ohio regardless of the reasons impelling him to do so, since he was in no sense a fugitive from justice in any criminal action.

On the 5th day of November, 1952, Sophia Tritto caused her affidavit to be filed in the Supreme Court of Westchester County, New York, in which she set forth the fact that the order for temporary alimony had been made September 12, 1945; that "immediately after this order was signed the defendant left this jurisdiction and his whereabouts was **unknown until one month ago**"; that "because of his absence plaintiff was unable to serve upon the said defendant a certified copy of the said order"; that "the defendant is no longer in this jurisdiction having left this state shortly after the aforementioned order was signed. I have been informed that he is presently in Youngstown, Ohio." Her affidavit stated that defendant has never made any payments pursuant to the previous order, has failed to pay the sum of $20.00 per week since the signing thereof, and the defendant is in arrears in the sum of $7440.00; that she makes this affidavit pursuant to Section 1171-B of the Civil Practice Act, "for an order, directing the Clerk of the County of Westchester to enter a money judgment in my favor and against the defendant in the sum of $7440.00"; that no other judgment has ever been entered for such sum, and that no previous application has been made for the relief or order sought herein. Her affidavit further sets forth that "Barnes, Barnes & Barnes, Esq. of 31 Croton Avenue, Ossining, New York, upon information and belief, have been and still are the attorneys for the defendant in this matter in this state. I, therefore, respectfully request that the court direct the service of these papers, including the order to show cause for service upon the defendant by serving his attorneys here in New York."

John E. Babchak, Jr., an associate of Emanuel Lauterbach, attorney for plaintiff, made affidavit that "on the 11th day of November, 1952, he served the within affidavit and order upon Thomas Barnes, Esq. attorney for defendant, Anthony Tritto, by delivering to and leaving personally with said Thomas Barnes, Esq. a true copy thereof": and further "that he knew the person served as aforesaid to be Thomas Barnes, the person representing the defendant named in said Affidavit and Order."

It definitely appears that the order and affidavit were not served in strict accordance with the direction of the judge to serve Barnes, Barnes & Barnes, but Thomas H. Barnes, the original attorney for Anthony Tritto, received such notice, and on the 18th day of November, 1952, he filed his affidavit alleging that he is an attorney at law and a member of the firm of Barnes and Barnes, Attorneys-at-Law; and further avers:—

"That the partnership of Barnes and Barnes was formed and commenced the practice of law as a partnership on January 1, 1946, and have never been and are not now attorneys for Anthony Tritto.

"That your deponent is not an attorney for Anthony Tritto and has not been attorney for Anthony Tritto since on or about September 12, 1945. * * *

"* * * no certified copy of order was ever served upon him and no copy of proposed order was ever served upon him."

Thomas H. Barnes further avers that Anthony Tritto had left Ossining, and he has not heard from him either directly or indirectly since his departure over seven years ago, and does not know of his whereabouts except that the affidavit of Sophia Tritto in the present motion alleges that she is informed that he is presently in Youngstown, Ohio; and that deponent is not and does not consider himself attorney for Anthony Tritto since September 12, 1945, over seven years ago; and that this affidavit is made by deponent not as attorney for defendant, Anthony Tritto, but for the information of the court only.

On the 7th day of November, 1952, the following order was made by Elbert L. Gallagher, Judge of the Supreme Court of Westchester County, New York:—

"On the affidavit of Sophia Tritto, verified the 5th day of November, 1952, and on all the papers and proceedings heretofore filed and had herein.

"Let, Anthony Tritto, the defendant above named, show cause before this court at a special term, Part I thereof, to be held in and for the County of Westchester, at the County Courthouse in the City of White Plains, on the 18 day of November, 1952, at 10:00 o'clock in the forenoon of that day or as soon thereafter as counsel can be heard. why an order should not be made directing the entry of judgment for the amount of arrears in the payment of the sums of money required to be paid by the defendant above named to the plaintiff above named under the order of this court made and entered on the 12th day of September, 1945, and requiring the defendant to pay to the plaintiff her expenses in bringing and carrying on this proceding and why plaintiff should not have such other and further relief as to the court may seem just and proper.

"Sufficient cause appearing therefor, let service of this order and the affidavit upon which it is granted upon the said defendant's attorneys Barnes, Barnes & Barnes, Esqs., 31 Croton Avenue, Ossining, New York, on or before the — day of November, 1952, be deemed sufficient."

Section 1171-B of the Civil Practice Act of the State of New York is correctly set forth in the amended reply of plaintiff filed in Mahoning County Common Pleas Court.

Upon the trial of this action, as shown by the bill of exceptions filed herein, the deposition of Thomas H. Barnes was admitted in evidence and read wherein he testified he was not attorney for Anthony Tritto on November 21, 1952, in the proceedings entitled Sophia Tritto v. Anthony Tritto in the Supreme Court of Westchester County, New York; that he notified the Supreme Court of New York prior to November 21, 1952, by affidavit that the relationship of attorney and client had been terminated, his affidavit being filed not as attorney for Anthony Tritto, but for the consideration of that court alone; that there are two Thomas Barnes in the firm of Barnes & Barnes; that his name is Thomas H. Barnes, and the other member of the firm is Thomas G. Barnes; that Thomas H. Barnes is the attorney who filed the affidavit of Anthony Tritto in the matter of allowance of temporary alimony.

As will be observed from the quoted affidavit of John E. Babchak,

Jr., the affidavit and order made in the proceedings to reduce the alimony order to judgment was served merely upon Thomas Barnes, without designating a middle initial. It further appears, as hereinabove set forth, that the judge of the court in that proceeding directed that the service of the order and affidavit be made upon "said defendant's attorneys, Barnes, Barnes & Barnes, Esq., and be deemed sufficient."

Upon the trial of this action in Mahoning County, as shown by the bill of exceptions filed herein, Emanuel Lauterbach, the attorney who represented Sophia Tritto in the New York Court, testified as an expert and gave proof as to the authenticity of the quoted act, Section 1171-B, and also testified as to Statutory Rule of Civil Practice, Section 240, which says:—

"Death, removal or disability of attorney. If an attorney dies, is removed, or suspended, or otherwise becomes disabled to act at any time before judgment in an action, no further proceeding shall be taken in the action against the party for whom he appeared until thirty days after notice to appoint another attorney has been given to that party either personally or in such manner as the court directs."

He then testified as to Rule 56, the rule for procedure, as follows:—

"Substitution of attorneys. An attorney of record for an adult party or corporation may be changed by the filing, with the clerk of the court in which action or proceeding may be pending, of a stipulation in writing for such change of attorney, signed by the attorney and signed and acknowledge by the party. The making and filing of such stipulation shall have the same effect as an order of substitution. An attorney may also be changed by order."

Mr. Lauterbach testified that substitution had not been accomplished in the manner set forth in Rule 56.

But it is noticed that the rule only says that an attorney "may be changed" and not that the rule prohibits a change in any other manner, and the affidavit of Mr. Barnes that he has not been attorney for Mr. Tritto since 1945 is not disputed, and Mr. Tritto testified that Mr. Barnes was employed only for the purpose of filing the affidavit opposing the allowance of temporary alimony and paid only for that service, which was evidently the understanding of both Mr. Barnes and Mr. Tritto.

In his testimony Mr. Lauterbach quoted from Thomas v. Thomas, 178 Miscellaneous, Page 359, as follows:—

"Generally, where a party appears by attorney one has a right to presume, nothing else appearing to the contrary, that his employment as such is a continuing one to the end of the litigation, and it is held that in ordinary cases an attorney has a right to consider his employment as so continuing unless dismissed by his client. However, it does not follow from the power of the client to discharge his attorney that it can be employed as a device to create a disability for the purpose of trial or to hamper or defeat the administration of justice. Where the condition of disability is thus created, whether done solely by the client, or resulting from collusion, the statute is inoperative. The true design of the law is, in a proper case, giving due consideration to attending facts and circumstances, to afford a party left without counsel a reasonable

opportunity to engage one to protect his interests and rights and the statute cannot be utilized or availed to have another and different purpose."

We have had some difficulty in identifying the quoted language as appearing in Thomas v. Thomas, supra, but find that Mr. Lauterbach selected from the opinion in that case disjointed sentences and quoted them as a single paragraph.

The syllabus in the case of Thomas v. Thomas is too long to quote fully herein, but it will be seen that certain paragraphs of that syllabus may be construed as sustaining the position of the wife and other paragraphs are contrary thereto. That court apparently held that Rule 56, above quoted, was not the only way in which an attorney and client relationship could be terminated, and it is apparent by the use of the word "may" in that rule the court was justified in holding that "to discharge attorney, court order or special formality is not required, and any act of client indicating unmistakable purpose to sever relations is sufficient, and thereafter there cannot be legal continuance in case by attorney or appearance for or representation of the client." That court held that Section 240 of the Civil Practice Act applied, but also held:—

"Under statute relating to stay of proceedings in event of attorney's disability, client's right to discharge attorney cannot be employed as device to create disability to delay trial or to hamper or defeat administration of justice." Thomas v. Thomas, 34 N. Y. S. (2d) 321.

In this case the testimony of Thomas H. Barnes is to the effect that Mr. Tritto indicated that he would leave the state of New York rather than pay the temporary alimony allowed by the court. He states that he did not receive any copy of the order allowing temporary alimony, but is is quite clear that if he did not receive such copy he had left the state of New York without informing his attorney as to where he could be found, nor did he give any information to the court which would have enabled a notice of allowance of temporary alimony to be served upon him. He apparently followed the example of the ostrich and stuck his head in the industrial sands of Mahoning County where he has resided ever since.

While Mr. Barnes, the attorney who represented the husband in the original action, testified that he did not consider himself as now being attorney for Mr. Tritto we think that the court of that jurisdiction was justified in the assumption that Mr. Barnes' relationship as attorney had never been severed. While the notice was not served upon Barnes, Barnes & Barnes we think that it was served in the only manner which would reasonably give notice to Mr. Tritto under the circumstances, and that the court was justified in holding that compliance with the provisions of Section 1171-B of the Civil Practice Act had been sufficiently complied with.

The case of Thomas v. Thomas is severely criticized by the Supreme Court of two other jurisdictions of like authority. Cann v. Cann (204 Miscellaneous 1069) 127 N. Y. S. 57, and Hendry v. Hilton (283 Appellate Division 168) 127 N. Y. S. 458. However, the United States District Court for the Southern District of New York in the case of Commercial Laundry, Inc. et al, v. Linen Supply Assn. of Greater New York,

Inc. et al, 90 Federal Supplement 470, cites with approval the decision in Thomas v. Thomas, supra, and says in the opinion "and it is clear an attorney's withdrawal from the case is a disability covered by the section," referring to Section 240 of the New York Civil Practice Act

Mr. Lauterbach also identified Minear v. Minear, 188 Miscellaneous 101, 66 N. Y. S. 2d 879; Davidson v. Ream, 175 App. Div. 6, Page 760; Ridder v. Ridder, 175 Miscellaneous, Page 84, which refers to the case of Michigan Trust Company v. Ferry, 228 U. S. 346; Muller v Muller, 184 New York Miscellaneous 587; Durlacher v. Durlacher, 173 New York Miscellaneous 329; Rosenthal v. Rosenthal, 201 Appellate Division of New York, Page 27 at 29, referring to Wulff v. Wulff, 74 Miscellaneous Reports 213, 133 New York Supplement 807, affirmed 151 Appellate Division 22.

Mr. Lauterbach quoted from several of the above decisions. It is quite apparent that there is much confusion even in the state of New York as to whether the notice to the husband provided for in Section 1171-B would constitute due process of law.

From our examination of the authorities available, however, we conclude that the order to reduce payments of temporary alimony to a lump sum, as was done in this case, is not the institution of a new action, but that the purpose of the section is solely to provide a means by which the wife may enforce, by execution, or by proceedings in the courts of the state where the husband may be found for the collection of the amount of such alimony which has not been modified or changed in the original action.

Unquestionably Mr. Tritto, having entered his appearance in the original action was bound to know that if he did not move to modify the allowance of temporary alimony therein made it would accumulate to the amount subsequently found by the Supreme Court of the County of Westchester, New York. He made no move to modify that decree.

Keeping in mind that Section 1171-B hereinabove quoted provides that the notice of application to reduce the several amounts to a lump sum "shall be given to the husband" as the court may direct, it is clear that such proceeding is upon motion ancillary to the action for separation and alimony, and if it be claimed that the court abused its discretion in requiring such notice to be served upon the attorney who filed the defendant's answer then the remedy of the defendant would be to apply to the court of jurisdiction rather than to attempt to collaterally attack the action in the court in the proceeding instituted in the court of Mahoning county.

It is apparent that the provisions of the quoted section do not attempt to provide due process of law necessary in the original action but only in an ancillary matter upon motion for the purposes therein stated, to-wit of enforcing the judgment theretofore rendered for alimony, which had not been modified.

In this respect we cite in particular the case of Durlacher v. Durlacher, 173 New York Miscellaneous, 17 N. Y. S. (2d) 643.

It is not the province of this court to declare the act unconstitutional.

Since the New York Court had jurisdiction over the cause of action

and in his answer filed in that court he entered his personal appearance therein, his remedy, if any, would have been to apply to that court to set aside its order if the notice to defendant was claimed to be insufficient rather than to attack the same collaterally in the Ohio court.

It furthermore appears to this court under authority of **Armstrong v. Armstrong, 117 Oh St 558,** that even though the New York court had not made an order finding the total amount of temporary alimony due nevertheless plaintiff would have had an action in the courts of the state of Ohio to recover the accumulated amount of alimony provided by the judgment of the New York Court. That was exactly the situation in the Armstrong case.

We find no error prejudicial to the rights of the defendant in this case which would justify this court in holding that the proceedings in the Supreme Court of Westchester County, New York, were unconstitutional and void, or in holding that the judgment of the common pleas court of Mahoning County, Ohio, should be reversed, and it is therefore affirmed.

GRIFFITH, J, concurs in opinion and judgment.

PHILLIPS, PJ, concurs in judgment.

## CONCURRING OPINION

By PHILLIPS, PJ.

Defendant appealed to this court on questions of law from a judgment of the court of common pleas in the amount of $7440.00 entered upon a finding of a judge thereof for plaintiff in her action against defendant, her husband, to recover, together with costs of $10.00, a judgment against him for temporary alimony of $20.00 a week decreed her by the Supreme Court of Westchester County, New York, on November 21, 1952, in her action for separate maintenance filed in that court on November 10, 1945.

The parties were married in New York City, N. Y., on January 17, 1943, and lived together thereafter for two years as husband and wife in Ossining, New York.

The evidence discloses that defendant was duly and regularly served with summons in plaintiff's action in Westchester County, New York, for separate maintenance; that the amount, nor any part, of the decree of the New York court or judgment of the Ohio court has ever been paid by defendant to plaintiff, that during the year 1945 defendant established his residence in Youngstown and has lived in Youngstown and been employed there since that year, during which time plaintiff did not live with him in Youngstown as his wife. There is disputed evidence that defendant established his residence in Youngstown for the purpose of evading payment of alimony to plaintiff.

Defendant claims that the alimony order was entered without his knowledge or the knowledge of Attorney Thomas H. Barnes.

Personal service of a copy of plaintiff's affidavit filed with the Supreme Court of Westchester County, New York, on November 5, 1952, asking for an order to show cause and for a money judgment to be entered in her favor for $7440.00 and court costs of $10.00 was made upon Attorney Thomas H. Barnes, who represented defendant last in 1945. Upon receipt

of that service Attorney Thomas H. Barnes advised that court by affidavit filed by him, and not as attorney for defendant, that he had not seen nor heard from defendant for more than seven years, and during that time had not and did not then consider himself his attorney.

The judgment for $7450.00 was entered subsequent to the execution and filing of such affidavit.

The trial court found and held that:—

"* * * the court finds in favor of the plaintiff and against the defendant.

"The court further finds that the defendant, Anthony Tritto, is indebted to the plaintiff, Sophia Tritto, in the amount of $7,450.00.

"The court further finds that the defendant's attorney in New York State, not having been discharged in the manner as prescribed in Rule 56 of the Rules of Civil Practice, his authority as to the adverse party continues unabated, Hendry v. Hilton App. Div. 12-30, 1953, N. Y. Journal Jan. 19, 1954; by virtue of the last sentence of Section 1171-B of the N. Y. Civil Practice Act, the judgment of the New York Court is not subject to modification, but is final; the judgment being valid in New York per authority cited in the briefs, Ohio must give full faith and credit to it, 117 Oh St 558 and other citations; this court holds Rule 56 to be constitutional, although whether the U. S. Supreme Court will so hold as applicable to a defendant who is no longer a resident or citizen of New York state is an open question.

"Wherefore, it is ordered, adjudged and decreed that the plaintiff, Sophia Tritto, recover of the defendant, Anthony Tritto, the sum of $7,450.00, together with the costs herein made, and execution is awarded therefore; to all of which defendant, by his counsel, excepts."

By assignments of error defendant contends:—

"1. The court of common pleas erred in its findings and judgment for the plaintiff.

"2. The court erred in the rejection of evidence offered by the defendant-appellant, to which rejection of evidence the defendant-appellant at the time excepted.

"3. The findings and judgment of the trial court is not sustained by sufficient evidence and is contrary to law.

"4. The findings and judgment of the trial court is contrary to the manifest weight of the evidence.

"5. The opinion, finding, order and judgment of the common pleas court for plaintiff-appellee and overruling defendant-appellant's motion for a new trial are not based upon or supported by either the manifest weight of the evidence or any evidence, but in fact unsupported by and are contrary to the evidence and contrary to law."

Defendant contends that the "questions presented" are:—

"Whether the rules of court 56 and Civil Practice Act of New York, Sec. 240, Sec. 1169, 1170 and Sec. 1171-b are applicable to a non-resident defendant, and if so, whether proper notice was served upon the non-resident defendant, Anthony Tritto?

"Whether court rule 56 and Civil Practice Act Sec. 240, Sec. 1169, 1170 and Sec. 1171-b are constitutional and applicable so far as affecting

the substantial rights of a defendant who is no longer a resident or citizen of the state of New York."

In a word defendant's contention with reference to the questions presented is:—

"* * * that the alleged judgment of November 21, 1952, by the New York court is void because proper notice was not served on the defendant; that the relation of attorney and client was of limited employment for the sole purpose of the motion for temporary alimony, that personal knowledge and written notice was given to Mr. Lauterbach, Attorney for plaintiff, and also to the New York court prior to the entering of the alleged judgment upon which this action is based; that the temporary order for alimony was not a final judgment and was subject to modification; and therefore the trial court in the case at bar erred in finding for the plaintiff."

Plaintiff contends that the Supreme Court of Westchester County, New York, had jurisdiction over defendant's person to enter judgment against him because such judgment is valid and enforceable in Ohio "according as it is or is not valid in the state of rendition (23 O. Jur. Sec. 470, Page 790, Armstrong v. Armstrong, 117 Oh St 558)"; that "irregularities in the rendition of a foreign judgment can not be questioned in the courts of this state. Goodrich v. Jenkins, Wright, 348; Sipes v. Whitney, 30 Oh St 69; Armstrong v. Armstrong, 117 Oh St 558."

In the syllabi of the case of Armstrong v. Armstrong, supra, the supreme court said:—

"A judgment for alimony payable in installments rendered upon entering a decree for divorce constitutes a final judgment within the full faith and credit clause of the Federal Constitution so far as accrued installments are concerned, no modification of the decree having been made prior thereto, unless it appear from the law of the jurisdiction wherein the decree was granted that the power of modification expressly retained extends to accrued as well as to future installments of alimony.

"Where a divorce was regularly decreed by a Kentucky court and a sum payable in installments was awarded as alimony and for the support and maintenance of children of the parties and there has been no modification of such judgment it will be enforced by the courts of Ohio under the full faith and credit clause of the Federal Constitution."

In the body of the opinion written in the Armstrong case the supreme court at page 566 said:—

" 'If the husband moves out of the jurisdiction of the court, and so remains continuously for a long period of time, he renders the statute nugatory and the court without power to act further. Such a litigant ought not be permitted to evade the letter and spirit of the statute as applied to himself, and at the same time use it as a weapon against his helpless adversary.' "

In the case of Bowling v. Bowling, 62 Abs 178, the court held that accrued installments of alimony is a final judgment which is enforceable in Ohio.

In the case of Appel v. Appel, 78 Oh Ap 53, a wife sued her husband in Ohio on a New York judgment for alimony in the sum of $700.00. The husband contended that the order made by the New York Court was

contrary to law and not a final judgment; and accordingly was not entitled to full faith and credit because it was subject to modification by the New York Court. In that case the court of appeals for Frankklin County, relying on the rule announced in Armstrong v. Armstrong, supra, in a well reasoned opinion, held:—

"A judgment rendered by a court in the state of New York for $700.00 for unpaid installments of alimony under a section of the Civil Practice Act of that state which provided that 'the court may make an order directing the entry of judgment for the amount of such arrears, * * * Such judgment may be enforced by execution or in any other manner provided by law for the collection of money judgments' is a final judgment on which suit may be brought in the courts of this state and is entitled to full faith and credit under the 'full faith and credit' clause of the United State Constitution."

In the case of Barber v. Barber, 323 U. S. 77, a North Carolina Court of competent jurisdiction upon authority of a statute of that state similar to the New York statute, involved in the case we review, entered judgment for the wife against her husband for alimony in arrears. A suit testing the full faith and credit of such judgment was commenced in Tennessee. In that case the Supreme Court of the United States said:—

"We do not find in the language on which the Tennessee court relied any clear or unequivocal indication that the judgment for arrears of alimony, on which execution was directed to issue, was itself subject to modification or recall. True, as the opinion of the North Carolina court states, the judgment for arrears of alimony was not a final judgment in the separation suit. As to future alimony payments not merged in the money judgment, the allotments ordered are, by the terms of the statute, subject to modification. * * *.

"* * * The present judgment is on its face an unconditional adjudication of petitioner's right to recover a sum of money due and owing which, by the law of the state, is a debt."

See also **Woodward v. Woodward, 16 Oh Ap 12.**

Reserving momentarily for consideration the question raised by defendant that the judgment of the New York court is invalid because no personal service was obtained on him when he was a resident of Ohio, but rather on Attorney Thomas H. Barnes in New York state, which judgment was rendered subsequent to receipt of notification by his attorney that he considered himself defendant's attorney no longer, it is apparent to me from the cited authorities that if the judgment for unpaid installments of alimony was duly and regularly rendered in a court of competent jurisdiction in New York such judgment is enforceable in Ohio under the comity clause of the Federal Constitution.

This conclusion brings me to consider forthwith the question whether the judgment sought to be enforced in Ohio was duly and regularly rendered in New York.

Section 1171-b of the New York Civil Practice Act, under which the judgment involved in the case we review was entered, provides:—

"Where the husband, in an action for divorce, separation, annulment, or declaration of nullity of a void marriage, or a person other than the

husband when an action for an annulment is maintained after the death of the husband, makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the court in its discretion may make an order directing the entry of judgment for the amount of such arrears, or for such part thereof as justice requires having regard to the circumstances of the respective parties, together with ten dollars costs and disbursements. The application for such order shall be upon such notice to the husband or other person as the court may direct. Such judgment may be enforced by execution or in any other manner provided by law for the collection of money judgments. The relief herein provided for is in addition to any and every other remedy to which the wife may be entitled under the law; provided that when a judgment for such arrears or any part thereof shall have been entered pursuant to this section, such judgment shall thereafter not be subject to modification under the discretionary power granted by this section; and after the entry of such judgment the judgment creditor shall not thereafter be entitled to collect by any form of remedy any greater portion of such arrears than that represented by the judgment so entered (Am. L. 1940 ch. 226, in effect Sept. 1; L. 1947 ch. 713. in effect Sept. 1; L. 1948 ch. 212, in effect March 21)."

Acting under authority of that section of the New York Civil Practice Act, upon the filing by plaintiff of her affidavit on September 5, 1952, in which she sought an order to reduce delinquent installment alimony payments to judgment, the judge of the New York court in his discretion, which there is no evidence or claim he abused, ordered service of such affidavit made on Attorney Thomas H. Barnes.

In discussing Section 1171-b in the case of Muller v. Muller, 54 N. Y. S. (2d) 462, the court said:—

"The statute providing that application for order in separation action directing entry of judgment for amount of alimony arrears shall be upon such notice to husband as court may direct does not require personal service upon husband and contemplates that court will direct that service shall be made in a manner in keeping with particular circumstances which may be involved."

In this case I believe that service upon Attorney Thomas H. Barnes prior to final judgment being rendered under Section 1171-b is valid under the New York law and is good service binding the defendant. Rosenthal v. Rosenthal, 193 N. Y. S. 702.

In the case of Hendry v. Hilton, 127 N. Y. S. (2d) 454, decided December 30, 1953, which defendant contends, but I do not believe, is easily distinguished from the case we review, the Supreme Court, Appellate Division, Second Department, said:—

"1. Statute providing that if an attorney dies, is removed or suspended or otherwise becomes disabled to act at any time before judgment in an action, no further proceedings shall be taken in action against party for whom he appeared until 30 days after notice to appoint another attorney has been given, does not relate to removal or suspension of attorney from the case, or his disability to proceed therein, when such removal, suspension or disability is caused by voluntary act of attorney or client or by both, but it connotes a force majeure, such as death,

mental or physical incompetency or other act not of a voluntary character. Civil Practice Act. Section 240.

"2. Purpose of statute declaring that if an attorney dies, is removed or suspended or otherwise becomes disabled to act at any time before judgment, no further proceedings shall be taken against party for whom he appeared until thirty days after notice to appoint another attorney has been given is to afford a litigant who has, through no act or fault of his own, been deprived of the services of his counsel, a reasonable opportunity to obtain new counsel before further proceedings are taken against him in the action, and thus a client's voluntary discharge of his attorney after trial, but before signing of judgment, did not entitle defendants to benefit of the thirty day provision. Civil Practice Act, Section 240.

"3. Until an attorney of record is discharged in the mode prescribed by law, consisting of either an order of the court or by stipulations signed by the attorney and the client, the attorney is authorized to act for all purposes incidental to the entry and enforcement of the judgment, and as to adverse parties his authority continues unabated, but client may retain another attorney for purpose of prosecuting an appeal, without necessity of any formal substitution. Rules of Civil Practice, rule 56; Civil Practice Act, Sections 99, subd. 3, 240, 612.

"4. Statute declaring that if an attorney dies, is removed or suspended within time fixed by law to take an appeal, without having served notice of appeal, such notice may be served within sixty days from date of death, removal or suspension, did not apply to situation in which client discharged attorney following trial, but before signing an entry of judgment, and did not extend the time to appeal when removal at any events occurred prior to service on attorney of copy of judgment, thereby commencing the time fixed by law for taking the appeal. Rules of Civil Practice, rule 56 Civil Practice Act, Sections 99, subd. 3, 240, 612."

Concerning the question raised by defendant that the judgment was rendered by the New York court subsequent to receipt by that court that the relationship of attorney and client no longer existed between defendant and Attorney Barnes and Section 240 of the New York Civil Practice Act it is stated in the case of Hendry v. Hilton, supra, that:—

"Obviously, the purpose of the statute, Civil Practice Act, Section 240, is to afford a litigant, who has, through no act or fault of his own, been deprived of the services of his counsel, a reasonable opportunity to obtain new counsel before further proceedings are taken against him in the action. That purpose is fully subserved if the application of the statute be confined to causes which, as to the client, may be said to arise from a force majeure or one over which he has no control. A client's voluntary discharge of his attorney is plainly not such a cause.

"It may be noted that in a comparatively recent decision, Thomas v. Thomas, 178 Misc., 394, 34 N. Y. S. (2d) 320, a contrary view is expressed. It was there held that an attorney's discharge by a client is a removal or disability within the purview of the statute. Civil Practice Act, Section 240. For the reasons already assigned we do not subscribe to that view.

"If section 240 may not be invoked by the defendants, then it fol-

lows that the service of the copy of the judgment with notice of entry upon their original attorney on July 10, 1953, was valid. Until an attorney of record is discharged in the mode prescribed by law, Rules Civil Practice, rule 56, that is, by order of the court or by stipulation signed by the attorney and the client, the attorney is authorized to act for all purposes incidental to the entry and enforcement of the judgment; as to the adverse parties his authority continues unabated. Ohlquist v. Nordstrom, 143 Misc. 502, 257 N. Y. S. 711, affirmed 238 App. Div. 766, 261 N. Y. S. 1039, affirmed 262 N. Y. 696, 188 N. E. 125, supra; Commercial Bank v. Foltz, 13 App. Div. 603, 43 N. Y. S. 985, supra; Lusk v. Hastings, 1 Hill 656; Miller v. Shall, 67 Barb. 446. Of course, for the purpose of prosecuting an appeal from the judgment the client is free to retain another attorney without the necessity of any formal substitution. Gradl v. Saulpaugh, 268 App. Div. 787, 49 N. Y. S. (2d) 51, and cases cited there and in 70 A. L. R. 836."

In the case of Gang v. Gang, 171 N. E. 568, it is said:—

"Order of Appellate Division modifying order in special proceeding to compel refund of money received from client is appealable to Court of Appeals as matter of right.

"Appellate Division's modification of Special Term's order is assumed modified on error of law, in absence of contrary showing.

"Court of appeals applies to final orders same presumption on reversal by appellate division that is applied to judgments."

In the case of McCloskey v. McCloskey, 128 N. Y. S. (2d) 24, the court said:—

"This is a motion by plaintiff-wife for an order enjoining defendant-husband from proceeding with the prosecution of his action for divorce instituted by him in the state of Nevada. The moving papers were served upon defendant's attorneys who had previously appeared for him in the separation action commenced by plaintiff wherein temporary alimony and counsel fee had been awarded. Defendant has defaulted in his payments and is now in arrears. Defendant left the State of New York and went to Nevada where he started his action for divorce against plaintiff by publication. Defendant's attorneys have appeared specially on this motion contending that this court has no jurisdiction as service upon the attorneys was improper since they no longer represented defendant. This position is not well taken. The motion is part of and incidental to the separation action and plaintiff having shown prima facie that defendant's alleged residence in Nevada was a sham this court has jurisdiction over the defendant for the purpose of granting injunctive relief based upon the original service of the summons in the separation action. Where the husband has appeared generally in an action for separation brought against him in the courts of this state a notice of motion in which the wife seeks an order restraining the prosecution of a foreign divorce may properly be served upon the attorneys who appeared for him in the separation action. Garvin v. Garvin, 302 N. Y. 96, 96 N. E. (2d) 721."

It can be said in this appeal in substance concerning defendant, and as applicable, as was said in the case of Durlacher v. Durlacher, 17 N. Y. S. (2d) 643 at 645:—

"The defendant's claim of unconstitutionality follows this line of reasoning: (a) that since the defendant was not bodily within, or a resident of, the state when the statute was enacted or thereafter, the court could acquire no jurisdiction over him to direct the entry of a personal judgment against him without personal notice, and (b) that the notice provided for by the statute and given him under the order to show cause was not personal and was, therefore, insufficient to confer such jurisdiction. He argues that the jurisdiction of his person obtained when the original judgment of separation was rendered in 1934 does not supply a jurisdictional basis for the money judgment sought upon this application, since such money judgment was only authorized under a statute enacted in 1939. He further argues that to hold the statute constitutional it must be interpreted as applying only either prospectively to judgments entered after its enactment or to defendants who were subject to the sovereignty of the state at the time of its enactment or thereafter. Under either interpretation, says the defendant, the statute will not permit the entry of the judgment applied for here.

"The fallacy of the defendant's contention lies in the fact that it interprets the statute as providing for the rendition of a new judgment when in fact its only purpose was to furnish a new means of effective enforcement of an old judgment. The statute extended no right to the plaintiff that she did not already have. It added nothing to the defendant's burden. The judgment entered in 1934 directed the payment of monthly alimony of $833.33, and that direction imposed a binding obligation on the defendant. It was not and could not be affected by his change of residence or by his absence from the jurisdiction. Prior to 1939 the statutory remedies for a failure to comply with such direction were sequestration and contempt proceedings. Section 1171-b added another statutory remedy, to wit, enforcement by execution. That that was its only purpose appears not only from the caption of the section, but from its last sentence."

I conclude that the judgment of the trial court was sound and free from error prejudicial to defendant and in any of the respects urged by him in his assigned grounds of error quoted supra. Accordingly the judgment of the trial court must be affirmed, as my associates have held in a majority opinion.